UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**CIVIL ACTION NO: 5:04CV-228-M**

**BURTON A. WASHBURN III, ET AL.**                                                               **PLAINTIFFS**

**V.**

**JOHN MICHAEL GARNER, ET AL.**                                                                **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendants, John Michael Garner and Aero Sport, Inc. [DN 3] to dismiss the action against them on the basis that Kentucky courts lack personal jurisdiction. In the alternative, Defendants request that the Court transfer this action from this Court to a court of appropriate jurisdiction in Florida. Fully briefed, this matter stands ripe for decision. For the following reasons, Defendants' motion to dismiss for lack of personal jurisdiction is **DENIED**, but their motion to transfer is **GRANTED.**

### I. STANDARD OF REVIEW

When a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) is made, the plaintiff has the burden of proving that jurisdiction exists. Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003). As a part of the burden of proof, the plaintiff's burden of persuasion depends upon whether the court conducts an evidentiary hearing on the motion to dismiss. When an evidentiary hearing is held, the plaintiff must establish jurisdiction by a preponderance of the evidence. Id. at 417. When there is no evidentiary hearing, the plaintiff must make only a prima facie showing and the pleading and affidavits

-1-

are viewed in a light most favorable to the plaintiff. Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1272 (6th Cir. 1998)). Federal courts apply the law of the forum state when determining whether personal jurisdiction exists. Youn, 324 F.3d at 417; Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002). If personal jurisdiction exists under the forum state's long arm statute, the court then must determine whether personal jurisdiction would comport with the Due Process Clause of the U.S. Constitution. Id.

The transfer of venue statute, 28 U.S.C. § 1404(a), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Though drafted "in accordance with the doctrine of *forum non conveniens*," Reviser's Note, 28 U.S.C. § 1404(a), courts and commentators alike have acknowledged that the scope of 1404(a) is much more liberal than that of the old doctrine. See Bacik v. Peek, 888 F. Supp. 1405, 1414 (N.D. Ohio 1993) ("the discretion to be exercised is broader") (quoting Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955)).

The moving party has the burden of proving that the transferee district is a better venue than the transferor district. Bacik, 888 F. Supp. at 1414. However, where a valid forum-selection clause exists, that clause must be considered in weighing the relevant factors, and the burden of persuasion shifts to the party opposing enforcement of the forum-selection clause. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29-30 (1988). The Sixth Circuit has outlined a number of factors to weigh in considering transfer of venue motions. "[W]hen ruling on a motion to transfer under § 1404(a), a district court should consider the private

interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systematic integrity and fairness, which come under the rubric of 'interests of justice.'" Moses v. Business Card Express, Inc., 929 F.2d 1131, 1137 (6th Cir.), cert. denied, 502 U.S. 821 (1991).  The Court will undertake an examination of these factors in relation to the case at bar, in accordance with the Supreme Court's mandate that the Court exercise its discretion to undertake an "individualized, case-by-case consideration of convenience and fairness."  Stewart Org., Inc., 487 U.S. at 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

## II. BACKGROUND

This case arises out of the sale of a used 1997 Cesna 182S aircraft.  Plaintiff Washburn (Washburn) purchased the aircraft from Aero Sport, a named Defendant who serves as an agent to the other named Defendant, John Michael Garner (Garner).[1]  Also joining Washburn in his suit are Plaintiffs H. Burton Banks, Jr. (Banks) and B-2 Air LLC (B-2 Air), who claim to have obtained a subsequent interest in the aircraft.

Washburn claims that he read one of Aero Sport's nationally published advertisements for the aircraft but upon calling to inquire about the aircraft was told that it had already been sold.  That sale fell through, however, and one of Aero Sport's salesmen pursued Washburn in an effort to sell the aircraft. The negotiation consisted of faxes, e-mails, and telephone calls in which both parties initiated frequent contact with the other party.  On December 21,

---

[1] Paducah Bank & Trust Company was originally named as a defendant but has since been dismissed from the case.

2003, Washburn arrived in Florida to pick up the aircraft. He also signed a "purchase agreement" which contained a choice of law and choice of forum clause providing,

> The venue of any dispute arising under this Agreement shall be St. Augustine, St. Johns County, Florida or Jacksonville, Duval, County Florida and the Governing Law in any such dispute shall be the law of the State of Florida.

Although Aero Sport represented the airplane to be in excellent condition, and although Washburn did not detect any signs of damage upon inspection, he later found that the aircraft had noticeable signs of repair. Specifically, the aircraft had been involved in a prop strike, and Washburn claims that the log records provided to him by Aero Sport failed to disclose the aircraft's prop strike or the subsequent repairs. Such damage reduced the value of the aircraft.

From these events, Plaintiffs bring this action based on the common law tort of fraud. They further claim that they are not bound by the "purchase agreement," as it was procured by fraud. For damages, Plaintiffs seek the purchase price, their costs and expenses, punitive damages, the fair value of the loss of use of an aircraft, damages based on emotional distress, attorneys fees and costs, and a declaration that the aircraft sale is void. Defendants argue in their motion that the Court should dismiss the Plaintiffs' Complaint for lack of personal jurisdiction, or, in the alternative, should transfer the case to the appropriate court in Florida.

### III. DISCUSSION

**A. Motion to Dismiss Based on Lack of Personal Jurisdiction**

Both parties acknowledge that the issue of personal jurisdiction involves an inquiry into the reach of the forum's state long-arm statute and considerations of due process. The

dispute concerns whether the Defendants' activities place it within the reach of Kentucky's long-arm statute. The Defendants assert that they have no substantial connection to Kentucky and have not in any way purposefully availed themselves to the privilege of acting in Kentucky. The Plaintiffs contend that the communications initiated by the Defendants place them within the reach of Kentucky's long-arm statute.

"Whether or not personal jurisdiction is established in any instance depends upon the facts and circumstances of each particular case." Info-Med, 669 F. Supp. 793, 796 (W.D. Ky. 1987). In determining whether the exercise of personal jurisdiction over a nonresident defendant is authorized, a federal district court must first apply the law of the forum state. Clay v. Hopperton Nursery, Inc., 533 F. Supp. 476, 478 (E.D. Ky. 1982). If the state long-arm statute would permit the exercise of personal jurisdiction over the nonresident defendant, the court must examine whether the exercise of jurisdiction is consistent with the Due Process Clause of the United States Constitution. Id. Where the state legislature has authorized state courts to reach the full constitutional limits in pursuing a nonresident defendant, these two inquiries become one. Id.

In Kentucky, the reach of the long-arm statute and considerations of due process are conflated as "the long-arm statute within this jurisdiction allows Kentucky courts to reach to the full constitutional limits of due process in entertaining jurisdiction over non-resident defendants." Wilson v. Case, 85 S.W.3d 589, 592 (Ky. 2002). Thus, the Court need only consider whether jurisdiction is proper under the Fourteenth Amendment. Nat'l Grange Mut. Ins. Co. v. White, 83 S.W.3d 530, 533-34 (Ky. 2002); see also Tobin v. Astra Pharmaceutical

Products, Inc., 993 F.2d 528, 541 (6th Cir.), cert. denied, 510 U.S. 914 (1993) (recognizing that the Kentucky long-arm statute has been understood to reach the full constitutional limits in entertaining jurisdiction over non-resident defendants).

"The relevant inquiry is whether the facts of the case demonstrate that the nonresident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" Theunissen, 935 F.2d 1454, 1459 (6th Cir. 1991) (quoting Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945)).  Depending on the type of contacts with the forum, personal jurisdiction may be either general or specific.  General jurisdiction exists upon a showing that the defendant has "continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant." Kerry Steel, Inc. v. Paragon Industries, Inc., 106 F.3d 147, 149 (6th Cir. 1997).  Specific jurisdiction is exercised over a defendant in a suit arising out of or related to the defendant's contacts with the forum.  Id.; Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-415 & nn. 8-10 (1984).  The Plaintiffs here do not contend that the Court has general jurisdiction over the Defendants.  Instead, Plaintiffs submit that Defendants' specific activities directed toward the forum state place the Defendants within the personal jurisdiction of the Court.

The Sixth Circuit has identified three criteria for determining whether specific in personam jurisdiction may be exercised.

First, the defendant must purposefully avail himself of the privilege of acting

>in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968). See also Theunissen, 930 F.2d at 1460; Franklin Roofing, Inc. v. Eagle Roofing and Sheet Metal, Inc., 61 S.W. 3d 239, 240 (Ky. Ct. App. 2001).

In order to determine whether personal jurisdiction over the Defendants would be appropriate in this forum, the Court must examine their contacts in terms of the three criteria outlined in Mohasco. "The three prong test is intended to be a framework for analysis and is not susceptible to mechanical application." Info-Med, 669 F.Supp. at 796 (citing Welsh v. Gibbs, 631 F.2d 436, 440 (6th Cir. 1980)). "Furthermore, the first and second prongs may be considered as one due to their inter-relatedness." Id. These prongs may be satisfied if a substantial business contract is present. Id.

Jurisdiction is proper under the purposeful availment requirement where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Moreover, the defendant's conduct and connection with the forum must be of a character that he or she should reasonably anticipate being haled into court there. Id. at 474. This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. Id. at 475.

"A defendant may be said to have purposefully availed himself of the benefits of the

forum state if he has either 'deliberately' engaged in significant activities within a state or created 'continuing obligations' between himself and the citizens of a forum." Info-Med, 669 F. Supp. at 796 (quoting Burger King, 471 U.S. at 475-476.). "[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities.'" LAK, Inc. v. Deer Creek Enterprises, 885 F.2d 1293, 1300 (6th Cir. 1989) (quoting Burger King, 471 U.S. at 473 ). "[J]urisdiction may not be avoided merely because the defendant did not physically enter the forum state, so long as a commercial actor's efforts are purposefully directed toward residents of another state." Info-Med, 669 F. Supp. at 796. "It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state [and national] lines, thus obviating the need for physical presence within a State when business is conducted." Id.

In Neal v. Jansen, 270 F.3d 328 (6th Cir. 2001), the Court applied these principles in considering the reach of Tennessee's long-arm statute over a non-resident defendant. In determining purpose availment, the Court noted that "[w]hen the actual content of the communications into the forum gives rise to an intentional tort action, that alone may constitute purposeful availment. It is the quality of the contacts, not the quantity, that determines whether they constitute purposeful availmenet." Id. at 332. The Court went on to state, "the actions of sending false information into Tennessee by phone and fax had foreseeable effects in Tennessee and were directed at individuals in Tennessee. These false representations are the heart of the lawsuit–they were not merely incidental communications

-8-

sent by the defendant into Tennessee." Id.

In the instant case, the Plaintiffs' claim is based on false representations that Defendants allegedly sent from Florida to Kentucky. The content of Defendants' communication gives rise to this intentional tort action. Thus, although Defendants focus on their minimal relationship with Kentucky, the quality of their contacts with Kentucky controls this case. Such contacts were in no way "random," "fortuitous," or "attenuated." Moreover, the facts of this case also satisfy the second prong of Mohasco. This circuit has noted that the first and second prongs can be considered as one due to their interrelatedness. Here, the Court has no trouble concluding that the Plaitniffs' cause of action arose from the Defendants' forum state activities. Thus, the lone remaining inquiry is whether the acts of the Defendants or consequences caused by the Defendants have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

In regard to the final prong, the Court in Neal, 270 F.3d at 333 concluded that the defendant "engaged in a business transaction with plaintiffs that went on over a substantial period of time. [The defendant] established a relationship with plaintiffs from which he hoped to profit financially. He then defrauded plaintiffs...These facts are sufficient to make it reasonable for Tennessee to exercise personal jurisdiction over defendant." Plaintiffs allege that Defendants Garner and Aero Sport behaved in a like manner. Thus, the Court finds that all three prongs of Mohasco are satisfied, and Defendants' motion to dismiss for lack of personal jurisdiction is **DENIED.**

**B. Motion to Transfer**

In the alternative, the Defendants seek a transfer of this action to an appropriate court in Florida based on the forum clause in the purchase agreement. Plaintiffs posit several arguments against transfer. They argue that the forum clause is not applicable, not valid or enforceable, and would be fundamentally unfair to Washburn, and, especially, to Banks. The Plaintiffs also contend that this Court lacks the authority to grant Defendants' requested transfer under both 12(b)(3) and 28 U.S.C. § 1404(a).[2] The Court will first consider that threshold issue before turning to the other issues raised by the Plaintiffs.

**1. F.R.C.P. 12(b)(3)**

The United States Court of Appeals for the Sixth Circuit addressed the propriety of venue in removed actions such as this one in Kerobo v. Southwester Clean Fuels Corp., 285 F.3d 531 (6th Cir. 2002). After removing the case from state court to federal court in Michigan, the defendants in Kerobo moved to dismiss based upon improper venue, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, citing a forum selection clause establishing venue in California. Id. The Court observed that venue in a case removed from state court "is governed solely by § 1441(a)." Id. at 534. The Court found that "[t]here is only one federal venue into which a state court action may be removed, and that is in the statutorily dictated "district court...for the district and division embracing the place where

---

[2]The Defendants moved to transfer this action pursuant to F.R.C.P. 12(b)(3). F.R.C.P. 12(b)(3), however, concerns dismissal based on improper venue. 28 U.S.C. § 1404(a) is the appropriate statute under which to consider the Defendants' motion to transfer. The Court will consider Defendants' motion under both statutes.

-10-

[the state court] action [was] pending." Id. at 535. Thus, the Court in Kerobo found that the lower court erred in granting the defendants' motion to dismiss for improper venue. Id. at 536; see also Tumbleweed, Inc. v. Am. Fed. Inc., No. 3:03CV-20-S, 2003 U.S. Dist. LEXIS 2780, at *3 (W.D. Ky. Feb. 2, 2003) (noting that while venue may have arguably been improper in the state court in a case in which a plaintiff sued in state court in a different state than that provided by the forum clause, the federal court's venue on removal is unassailable). Additionally, the Court found that only § 1404(a), not a Rule 12 motion to dismiss, governed the parties' venue dispute. Kerobo, 285 F.3d at 538-39. Thus, for the same reasons, a dismissal here under F.R.C.P. 12(b)(3) would be inappropriate.

**2. 28 U.S.C. § 1404(a)**

The Plaintiffs also argue that a transfer to a federal court in Florida is also inappropriate. In so arguing they rely on the Defendants' specific denomination of a state court in Florida as a proper forum in their motion and argue that Defendants are now precluded from seeking a transfer to a federal Court in Florida. In their motion, the Defendants note that the Middle District of Florida, Jacksonville Division, sits in Jacksonville, Duval County Florida, which was a venue provided by the forum selection clause.

28 U.S.C. § 1404(a), by its terms, vests a federal court with the power to transfer a case to a more convenient federal court. Id. The Plaintiffs correctly argue that "[t]he statute simply does not give authority to this Court to transfer a case to a state court judge sitting in a state courthouse in northern Florida." Thus, if a transfer can be had, it can only be to a

federal court in Florida.

Here, again, <u>Tumbleweed, Inc.</u> is instructive. Though the court in that case denied defendants' 12(b)(3) motion based on <u>Kerobo</u>, it granted a transfer to the Eastern District of Missouri after weighing the § 1404(a) factors. <u>Id.</u> at *5. The forum clause in <u>Tumbleweed, Inc.</u> read, "The enforcement of the terms of this agreement shall fall under Missouri law and be adjudicated in Missouri courts and is hereby acknowledged and agreed to by the borrower." <u>Id.</u> at *2. The Court found such language did not bar a transfer to a federal court in Missouri. <u>Id.</u> at *5.

Similarly, the forum clause here provides no bar to a transfer to a federal court. The clause is more specific than the clause in <u>Tumbleweed, Inc.</u> as it sets forth two specific venues, but one of the two venues, Jacksonville, is the home of a federal courthouse. The fact that the Defendants advocated for the transfer to a state court does not alter the conclusion that a transfer to a federal venue can be had if appropriate under § 1404(a). Having resolved the issue of the Court's ability to transfer this case, the Court now considers the appropriateness of a transfer on these facts.

### 3. Forum Selection Clause Changes the Presumption

The presence of a forum clause typically supports a transfer to the jurisdiction the parties selected in their clause. Though not dispositive, a forum selection clause constitutes a "significant factor that figures centrally in [a] district court's calculus" when evaluating a discretionary transfer under § 1404(a). <u>Stewart Org.</u>, 487 U.S. at 29. Such clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party

to be 'unreasonable' under the circumstances." Moses v. Business Card Express, 929 F.2d 1131, 1136 (6th Cir. 1991).

"[W]hen ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systematic integrity and fairness, which come under the rubric of 'interests of justice.'" Id. at 1137. In weighing these factors, courts have noted that the plaintiff's choice of forum should rarely be disturbed unless the balance is strongly in favor of the defendants. Catalona v. BRI, Inc., 724 F. Supp. 1580 (E.D. Mich. 1989); Simmons Ford, Inc. v. Consumers Union of United States, 490 F. Supp. 106 (W.D. Mich. 1980). However, where a valid forum-selection clause exists, that clause must be considered in weighing the relevant factors, and the burden of persuasion shifts to the party opposing enforcement of the forum-selection clause. See Stewart Org., 487 U.S. at 29-30. Such clauses should be enforced unless it would be unreasonable or unjust to do so. Id.

Thus, the Court must undertake the following analysis. First, the Court must consider whether the forum clause is applicable to the claims in this case. Second, if the forum clause applies, the Court must consider whether its inclusion in the purchase agreement was the product of fraud, in which case it would not be valid. If the clause is both applicable and valid, the Court must weigh the transfer factors enumerated in § 1404(a) to determine whether Plaintiffs have overcome the presumption in favor of a applicable and valid forum clause. Unless the forum clause is both applicable and valid, the Court is to adopt the

presumption in favor of the Plaintiffs' choice of forum.

### 4. Applicability

The forum selection clause states as follows:

> The venue of any dispute arising under this Agreement shall be St. Augustine, St. Johns County, Florida or Jacksonville, Duval, County Florida and the Governing Law in any such dispute shall be the law of the State of Florida.

The Plaintiffs argue that their tort claim does not "arise under this agreement" as that phrase is used in the forum clause. The Plaintiffs contend that the forum selection clause only applies to contract claims. Defendants argue for a broader interpretation of the forum clause. Under such an interpretation, the forum clause would cover Plaintiffs' tort claims, which Defendants contend arise out of the parties' contractual relationship.

The scope of the phrase "arising under this agreement" is not intuitively obvious. The court in Terra Int'l v. Mississippi Chem. Corp., 119 F.3d 688, 693-94 (8 th Cir. 1997) cited several cases that discussed a similar issue:

> In Banco Popular de Puerto Rico v. Airborne Group PLC, 882 F. Supp. 1212 (D.P.R. 1995), the parties entered into a sales agreement for the sale of a blimp. The agreement contained a forum selection clause which provided that "disputes hereunder or as to the construction of this Agreement shall be resolved in the Courts of England." Id. at 1213. The court determined that, in addition to his breach of contract claims, this clause encompassed all of the plaintiff's tort claims which included claims for negligent manufacture and maintenance of the blimp. Id. at 1214, 1217. Additionally, another court determined that a forum selection provision which read, "In the event of any litigation commenced by either party hereunder, such action shall be commenced in New York," covered tort claims based on fraud and deceit. Picken v. Minuteman Press Int'l, Inc., 854 F. Supp. 909 (N.D. Ga. 1993). In discussing the clause, which is remarkably similar to the one presently at issue, the court explained that "Reading the word 'hereunder' to apply only to a pure breach of contract claim between the parties would be unduly crabbed and

> narrow. 'Hereunder' refers to the relations that have arisen as a result of this contract." Id. at 911; see also, Warnaco Inc. v. VF Corp., 844 F. Supp. 940, 947-49 (S.D.N.Y. 1994) (finding tort claims covered by forum selection clause reading, "Any dispute or issue arising hereunder . . . ."); Nat'l Micrographics Sys., Inc. v. Canon U.S.A., Inc., 825 F. Supp. 671, 677-78 (D.N.J. 1993) (finding forum selection provision reading "any and all causes of action hereunder by and between the parties hereto" covered claims for tortious interference); but see, Hoffman v. Minuteman Press Int'l. Inc., 747 F. Supp. 552, 559 (W.D. Mo. 1990) (holding that tort claim for fraudulent inducement was not covered by forum selection clause reading "any litigation commenced by either party hereunder"); Berrett, 623 F. Supp. [946 D. Utah] at 947, 949 (finding that forum selection clause which read "parties agree that any action at law or in equity hereunder" did not apply to several business-related tort claims). These cases indicate that forum selection clauses referring to claims "hereunder" or "under the agreement" can be broad enough to cover contract-related tort claims.

Not only do courts dispute the import of similar language in forum clauses, but courts have also adopted several different approaches to address the problem, as the court in Terra Int'l went on to note,

> Although determining the scope of a forum selection clause is a rather case-specific exercise, several courts have offered further guidance on this issue and have articulated variously phrased general rules regarding the circumstances in which a forum selection clause will apply to tort claims. The Third Circuit has indicated that where tort claims "ultimately depend on the existence of a contractual relationship" between the parties, such claims are covered by a contractually-based forum selection clause. Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir.), cert. denied, 464 U.S. 938, 78 L. Ed. 2d 315, 104 S. Ct. 349 (1983). In Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988), the Ninth Circuit stated that "whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." The First Circuit has phrased its test slightly differently, explaining that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." Lambert v. Kysar, 983 F.2d 1110, 1121-22 (1st Cir. 1993).

Id. at 694.

This precedent offers the Court no definitive guidance on whether the forum clause at issue in this case should apply to the Plaintiffs' claims, and neither the Court, nor the parties, has located a case in which the Sixth Circuit expressly adopts a distinct analytical approach. The Court believes the test adopted by the Third Circuit is the better approach. The Plaintiffs' tort claim arises from the existence of the contractual relationship. The fraudulent misrepresentations were allegedly made during the formation of the contract. The Plaintiffs seek to declare the contract void.

The Plaintiffs focus on their pleadings and note the "artfully drawn pleading" rule. "Strategic or artfully drawn pleadings, however, will not work to circumvent an otherwise applicable forum selection clause." Terra Int'l 119 F.3d at 695 (citing Lambert, 983 F.2d at 1121; Coastal Steel, 709 F.2d at 203). Thus, the Court concludes that the Plaintiffs' Complaint is a "dispute arising under" the contract.

### 5. Validity/Enforceability

The Plaintiffs assert that the contract was a product of fraud, and, as such, it should not be enforced. The Defendants contend that forum clauses are prima facie valid and the Plaintiffs have failed to overcome the presumption in favor of such clauses.

Initially, the Court must consider whether state law or federal law governs the enforceability of a form clause. In M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972), the Court held that forum-selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the

circumstances. The Sixth Circuit, however, has not decided whether a federal court sitting in diversity jurisdiction evaluates the enforceability of a forum-selection clause under the rule of Zapata or under the applicable state rule. Security Watch, Inc. v. Sentinel Sys., 176 F.3d 369, 375 (6th Cir. 1999). The issue is immaterial, however, as forum selection clauses are likewise valid in Kentucky unless unreasonable. Prudential Resources Corp. v. Plunkett, 583 S.W.2d 97 (Ky. Ct. App. 1979).

In assessing validity, the focus is not on the contract itself but on the forum clause. General allegations of fraud in the inducement to sign the agreement or fraud in the performance of the agreement are insufficient to establish fraud specifically as to the forum-selection clause. Curtis B. Pearson Music Co. v. McFadyen Music, Inc., No. 1:04CV378, 2005 U.S. Dist. LEXIS 11196 (M.D. N.C. Jun. 3, 2005). To show that the forum-selection clause is unreasonable based on fraud, a plaintiff would need to show that the inclusion of the forum-selection clause itself was the product of fraud or coercion. See Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14 (1974)("[A] forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion"); see also Moses, 929 F.2d at 1138 (unless there is a showing that the alleged fraud or misrepresentation induced the party opposing a forum selection clause to agree to inclusion of that clause in the contract, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause). There must be a well-founded claim of fraud in the inducement of the clause itself, standing apart from the whole agreement, to render an arbitration clause unenforceable. Arnold v. Arnold

Corp., 920 F.2d 1269, 1278 (6th Cir. 1990). Although <u>Arnold</u> concerned arbitration clauses, such clauses are merely a particular type of forum selection clause, and thus <u>Arnold</u> applies to both arbitration clauses and forum selection clauses alike. <u>Moses</u>, 929 F.2d at 1138.

In their Complaint, the Plaintiffs make no mention of the forum selection clause itself. Though Washburn asserts in his affidavit that he agreed to leave the forum selection clause unchanged due to Defendants' assurances regarding the aircraft, he sets forth no well-founded claims of fraud in the inducement based on the clause itself, standing apart from the whole agreement. Thus, the forum clause is valid and enforceable.

**6. Transfer Analysis**

The conclusion that Plaintiffs' tort claims fall under and are covered by the scope of the forum clause does not end the analysis. As mentioned earlier, a forum clause is not a dispositive consideration in the transfer analysis. It is merely a factor, albeit a significant one, in the transfer analysis. The Defendants emphasize the fairness of the clause in the context of a business transaction, while the Plaintiffs contend that it would be fundamentally unfair to bind Washburn, and especially Banks, to the forum clause.

In applying the § 1404(a) transfer factors to this case, the Court notes first of all that the parties to the contract, all of whom appear to have been sophisticated entities, agreed on a Florida forum and on the governance of Florida law. Thus, to not transfer the case would ignore the forum selection clause and require the Kentucky federal court to apply Florida law. This result would hardly give the forum selection clause its appropriate central place in the calculus.

Aside from the forum selection clause, the factors do not favor either party. The Defendants, who raised a legitimate question as to personal jurisdiction, would be inconvenienced by litigating in Kentucky. Washburn, a Kentucky resident, would no doubt be inconvenienced by litigating this claim in Florida. The other factors in the transfer analysis similarly do not strongly favor one side. Thus, the forum clause proves to be dispositive in this analysis.

Finally, the Plaintiffs also argue that it would be particularly unfair to Banks, a non-party to the contract, if the case were transferred to Florida. To bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound. Baker v. Leboeuf, Lamb, Leiby & Macrae, 105 F.3d 1102, 1106 (6th Cir. 1997). Here, when Banks acquired an interest in the airplane, it was foreseeable that he would be bound by the forum clause if any problems had arisen between the Defendants and Washburn. The very existence of a forum clause contemplates litigation. Thus, it is not unreasonable to enforce the forum selection clause against Banks and B-2 Air.

## IV. CONCLUSION

For the foregoing reasons Defendants' motion to dismiss this case due to lack of personal jurisdiction [DN 3] is **DENIED.**  Defendants' motion to transfer this case to an appropriate court in Florida is **GRANTED.**  The case shall be transferred to the Middle District of Florida, Jacksonville Division.

cc: counsel of record
04cv-228 Washburn